**No. 58446.**—Hollywood Exports and Railway Express Agency *v.* United States, protest 192577–K (Los Angeles).

MOLLISON, Judge: The merchandise the subject of this protest consists of ladies' handbags, which were classified by the collector of customs and assessed with duty at the rate of 50 per centum ad valorem as bags, wholly or in chief value of palm leaf, under the provision therefor in paragraph 411 of the Tariff Act of 1930. The protest claim is for duty at the rate of 25 per centum ad valorem under the provision in the same paragraph and act, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, for bags, wholly or in chief value of straw.  .

The official sample of the merchandise, which had been retained by the appraiser, was offered and received in evidence as plaintiffs' exhibit 1.   It consists of a handbag made of a woven fiber.   It was agreed between counsel for the parties that exhibit 1 might be delivered by the appraiser to Dr. Mildred E. Mathias, who was identified as Senior Herbarium Botanist of the University of Southern California, for examination.

It appears that, subsequently, Dr. Mathias returned the exhibit to the appraiser, together with a letter, and at a hearing held before this court the said letter, reporting on the identity of the exhibit, was offered in evidence by counsel for the plaintiffs.   There being no objection, the letter was received in evidence as plaintiffs' exhibit 2.   The body of the letter reads as follows:

Dr. F. M. Scott, Professor of Botany, and a specialist in plant anatomy has made a microscopic examination of Laboratory sample no. 33062, Toquilla fibre bag.   Sections of the material used in the handle have been identified as strips of the leaf of a species of *Carloduvica*, *C. palmifolia* or a related species.   *Carloduvica* is a genus of the Cyclanthaceae.   Although the plants of this family have a palm-like appearance and habit they are not treated as palms botanically. Morphological studies have indicated that the family is an advanced derivative of the palms but so distinct that it is maintained in a separate order, the Cyclanthales or Synanthae.

Upon the receipt in evidence of exhibit 2, the plaintiffs rested.   With the observation that it was the opinion of the attorneys for the defendant having charge of the case that the plaintiffs had failed to sustain the twofold burden of overcoming the presumption of correctness attaching to the collector's classification and of establishing the correctness of the protest claim, the trial attorney for the defendant stated no evidence would be offered on its behalf, and rested.   Both sides submitted the case for decision, time being allowed for the filing of briefs.

In the brief filed on behalf of the plaintiffs, it is contended that it has been established by the report or letter received in evidence as exhibit 2 that the bags in question were not made of palm leaf, and with this contention we are inclined to agree.

The question first at issue is whether the merchandise was made of palm leaf. Webster's New International Dictionary, 1930, defines "palm leaf" as "The leaf of a palm * * *." The question that follows logically is, what is a palm? The same authority states that a "palm" is "Any monocotyledonous plant of the family Phoenicaceae." Although the definition is couched in terms used by the botanist, it does not bear any notation that it is limited to the scientific or botanical use of the term, nor is there any indication that the scientific or botanical meaning of "palm" is different from or more limited than the common meaning of the term.

Funk & Wagnalls New Standard Dictionary, 1937, contains a similar definition—"Any tree or shrub of the palm family (*Phoenicaceae* or *Palmaceae*)."

In view of the fact that no objection was made by the defendant to the competency or form of the evidence contained in exhibit 2, it must be considered that such objection was waived. It is established by the said exhibit that the merchandise at bar was made of a leaf of a species of *Carloduvica*, a genus of the *Cyclanthaceae* family. As the common definition of "palm" is limited to plants of the *Phoenicaceae* or *Palmaceae* family, the merchandise at bar is shown not to have been made of palm leaf, as that term is commonly understood. We, therefore, hold that plaintiffs established the incorrectness of the collector's classification.

The argument of plaintiffs' counsel that the report, exhibit 2, also establishes that the merchandise at bar was made of straw is as follows: The term "straw" has both a narrow and a broad meaning according to lexicographers. In its narrow sense it refers to stalks of threshed grain, while in its broad sense it refers to any similar fiber used in making straw hats. Counsel argues that the material, *Carloduvica*, appears to be the fiber from which panama hats are made, and that it is sometimes known as "toquilla" or "jipijapa," which, according to dictionary definitions of those terms, is used in plaiting panama hats and other wares.

Citing the decision of this court in *Caradine Harvest Hat Co.* v. *United States,* 46 Treas. Dec. 85, T. D. 40336, wherein certain Mexican palm-leaf hats were held to be dutiable under a provision for "straw hats known as harvest hats," plaintiffs' counsel draws the analogy that the bags at bar should be classified as bags, wholly or in chief value of straw.

Counsel's conclusion may be valid, but, in our opinion, it is not supported by necessary evidence. The decision in the *Caradine Harvest Hat Co.* was based upon evidence offered under the doctrine of commercial designation to the effect that the tariff term "straw hats known as harvest hats" had a definite and uniform signification in the trade and commerce of this country different from its ordinary meaning and embraced or comprehended a class of hats not made of straw, as that term is commonly understood, but harvest hats, made only of palm leaf, grass, or other material than straw. As a matter of fact, a reading of the opinion of this court in the *Caradine* case would indicate that it considered the common meaning of the term "straw" to embrace only straw of wheat, rye, oats, etc., i. e., straws of grains.

No evidence was offered along the lines of that offered in the *Caradine* case, *supra*, to the effect that the term "bags, wholly or in chief value of straw," as used in the tariff provision here in question, had a definite and uniform signification different from its ordinary meaning and embraced or comprehended a class of bags not made of straw, as that term is commonly understood, but bags made of the fiber of *Carloduvica, C. palmifolia,* or a related species. The commercial designation proved as to the tariff term. "straw hats known as harvest hats," used in the 1922 tariff act, would not, of itself, establish anything with

respect to the tariff term "bags, wholly or in chief value of straw," as used in the Tariff Act of 1930 and the modification contained in the General Agreement on Tariffs and Trade. Proof of a commercial meaning different from the common meaning must be made as a fact, as other facts which must be established, and may not be accomplished by mere legal argument and direction of the court's attention to citations of cases involving the doctrine of commercial designation.

Moreover, it should be noted that there is no proof that the fiber in the article at bar, to wit, *Carloduvica, C. palmifolia*, or a related species, is known as "toquilla" or "jipijapa," nor does it follow that, because those terms refer to a fiber used in panama hats which may be known as straw hats, any article made therefrom would necessarily be known as a straw article.

On the record before us, we are, therefore, constrained to overrule the protest claim, and judgment will issue accordingly.